Case No. 24-5706

United States Court of Appeals
for the Ninth Circuit

| | |
|---|---|
| Jennifer Lynn Mothershead, | |
| Petitioner-Appellant, | D.C. No. 3:21-cv-05186-MJP |
| vs. | |
| Deborah Wofford, | |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington, Seattle

**Brief of *Amici Curiae* Ninth Circuit Federal Public and
Community Defender Offices**

**In Support of Petitioner-Appellant's Opening Brief Seeking
Reversal**

Rene L. Valladares
Federal Public Defender
*Stacy Newman
Assistant Federal Public Defender
*Shelly Richter
Assistant Federal Public Defender
411 E. Bonneville Ave., Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577

*Counsel for Amici

## TABLE OF CONTENTS

Table of Contents.......................................................................ii

Table of Authorities............................................................... iii

Statement of Identity, Interest, and Authorship ......................1

Introduction ...........................................................................3

Argument ...............................................................................4

I.    *Loper Bright* prohibits this Court from deferring to state court judgments on questions of federal law. ...........................4

    A.    The historically grounded *Loper Bright* decision undermines the *Williams* interpretation of § 2254(d).......................................6

        1.    It is the role of federal courts to "say what the [federal] law is.".................................................................6

        2.    AEDPA, as interpreted before *Loper Bright*, abdicates the role assigned to federal courts to decide questions of federal law.........................................................9

        3.    *Loper Bright* recognizes that federal courts may not abdicate their role in deciding questions of federal law.........................10

    B.    This Court must exercise its own judgment—without deference—about what the Constitution requires in this case..16

        1.    *Williams* deference is inconsistent with an independent federal judiciary. .......................................................17

        2.    *Williams* deference is not a mere remedial limitation. ...........21

Conclusion............................................................................27

Defenders .............................................................................27

Certificate of Compliance .....................................................30

# Table of Authorities

**Supreme Court Cases**

*Bank Markazi v. Peterson*, 578 U.S. 212 (2016) ..................................6, 10

*Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984) 4, 11

*City of Arlington v. FCC*, 569 U.S. 290 (2013) ...................................6, 10

*Cohens v. Virginia*, 19 U.S. 264 (1821) ...................................................21

*Ex parte Bollman*, 8 U.S. 75 (1807) .........................................................8

*FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ...........24

*Harrington v. Richter*, 562 U.S. 86 (2011) ...........................................3, 5

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ..... *passim*

*Marbury v. Madison*, 5 U.S. 137 (1803) ........................................7, 10, 26

*Renico v. Lett*, 559 U.S. 766 (2010) ..........................................................5

*Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995)...................22, 23

*United States v. Dickson*, 40 U.S. 141 (1841) ...................................12, 24

*United States v. Klein*, 80 U.S. 128 (1871) .........................................6, 10

*United States v. Menasche*, 348 U.S. 528 (1955) ...................................10

*Waley v. Johnston*, 316 U.S. 101 (1942) (per curiam) ..............................8

*Williams v. Taylor*, 529 U.S. 362 (2000)...................................3, 9, 10, 21

**Federal Cases**

*Crater v. Galaza*, 491 F.3d 1119 (9th Cir. 2007) ..............................21, 22

*Davis v. Straub*, 445 F.3d 908 (6th Cir. 2006).......................................17

*Frye v. Broomfield*, 115 F.4th 1155 (9th Cir. 2024) ...............................19

*Meras v. Sisto*, 676 F.3d 1184 (9th Cir. 2012) ....................................5, 17

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) ....................................26

**Constitutional Provisions**

U.S. Const. art. III.................................................................................17

**Other Authorities**

1 *Works of James Wilson* (J. Andrews ed. 1896) ....................................14

Appellant's Supplemental Brief, *Sanders v. Plappert*, No. 16-6152 (6th Cir. Nov. 4, 2024) ...............................................................................8

James Steven Liebman & Anthony Amsterdam, Loper Bright *and the Great Writ*, forthcoming in Columbia Human Rights Law Review 2025 ........................................................................8, 18, 20, 25

*The Records of the Federal Convention of 1787* (Max Farrand ed. 1911) (James Madison) .....................................................................................7

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORSHIP

*Amici Curiae*, the Ninth Circuit Federal Public and Community Defender Offices ("Defenders," listed at the end), represent indigent state prisoners seeking relief under 28 U.S.C. § 2254 from their unconstitutional convictions and sentences when appointed to do so under either 18 U.S.C. § 3006A(a)(2)(B) or § 3599(a)(2).

Defenders have an interest in the outcome of this case because this case presents the question of the proper interaction between Article III of the Constitution and the deference to state-court rulings required under 28 U.S.C. § 2254(d) in the wake of *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). As the institutional defenders for indigent prisoners, we have a unique interest and particular expertise in this litigation's subject matter: all state prisoners filing habeas petitions must clear the hurdle found at 28 U.S.C. § 2254(d) whenever a state court has ruled on the merits of the petitioner's claims.

Defenders are authorized to file this brief under Fed. R. App. P. 29(a)(2) because the parties have consented to its filing.

No party's counsel authored this brief in whole or in part; no party, their counsel, or any other person contributed money intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(E).

## INTRODUCTION

In the recent case *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), the United States Supreme Court emphasized how Article III of the United States Constitution requires federal courts to exercise "judicial Power" independently—to interpret the Constitution and apply it to the facts of the case at hand.

In 2000, however, the United States Supreme Court upended this principle by interpreting a section of the recently passed Antiterrorism and Effective Death Penalty Act (AEDPA), codified as 28 U.S.C. § 2254(d), as requiring federal courts to defer to state courts on federal constitutional issues. *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Under *Williams*, federal courts must uphold flat-out wrong state court decisions applying constitutional law, just as long as there is a "possibility for fairminded disagreement" with the right application. *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

This abdication of federal court authority has been proven fundamentally untenable under *Loper Bright*. While *Loper Bright* overruled a long line of cases regarding deference to administrative agencies, its reasoning demonstrates that *Williams* deference to state

3

courts cannot stand either. Because it is unquestionably the province of federal courts to interpret the federal Constitution, and because *Williams* deference forbids federal courts from fully carrying out this duty, this Court should hold that under *Loper Bright*, *Williams* deference is unconstitutional.

## ARGUMENT

Defenders agree with Ms. Mothershead that this Court should, guided by § 2254(d), reverse the district court's decision to deny relief. This brief explains why her alternative argument, under which § 2254(d) would play no role in that decision, is also a compelling reason for reversing the district court.

## I. *Loper Bright* prohibits this Court from deferring to state court judgments on questions of federal law.

In *Loper Bright*, the Supreme Court relied on the fundamental role of federal courts to declare what federal law is in order to discard the rule of *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984). It found *Chevron* wrongly required deference to reasonable agency interpretations of their implementing statutes.

4

The decision has pressing implications for habeas petitioners. Under 28 U.S.C. § 2254(d)(1), a federal habeas court may not grant relief to a state prisoner unless a state court's decision on the merits is "contrary to, or involves an unreasonable application of, clearly established State law." As put starkly by this Court, this kind of deference can put a petitioner into a situation where "[h]e's probably right, but he loses anyway." *Meras v. Sisto*, 676 F.3d 1184, 1186 (9th Cir. 2012). To show an unreasonable application of law, for example, a "state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). A state court need not even give its reasons for denying a claim on the merits, because in the absence of any explanation, the petitioner still must show "there was no reasonable basis for the state court to deny relief." *Id.* at 98. Doubt counts against the petitioner. *Renico v. Lett*, 559 U.S. 766, 773 (2010).

Congress's requirement of deference to state-court decisions, as embodied in § 2254(d) and implemented under current Supreme Court

5

decisions, short-circuits the judicial function described in *Loper Bright* and is inconsistent with the judicial power of the United States imbued in this Court under Article III of the Constitution.

### A. The historically grounded *Loper Bright* decision undermines the *Williams* interpretation of § 2254(d).

*Loper Bright*, resting on a robust historical foundation, unsettles the framework of state-court deference established by the Supreme Court in *Williams*, calling for it to now be reexamined.

### 1. It is the role of federal courts to "say what the [federal] law is."

The contours of the judicial power that Article III vests in the federal courts are well established. "Congress has the power (within limits) to tell the courts what classes of cases they may decide . . . but not to prescribe or superintend how they decide those cases." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). It "may not usurp a court's power to interpret and apply the law to the circumstances before it." *Bank Markazi v. Peterson*, 578 U.S. 212, 225–26 (2016) (cleaned up); *see, e.g.*, *United States v. Klein*, 80 U.S. 128, 144–48 (1871) (finding such an attempt by Congress to be invalid). That is because "[i]t is

6

emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

Discussing this principle, *Loper Bright* explained that the Constitution "assigns to the Federal Judiciary the responsibility and power to adjudicate 'Cases' and 'Controversies.'" 144 S. Ct. 2244, 2257 (2024). "The Framers . . . envisioned that the final 'interpretation of the laws' would be 'the proper and peculiar province of the courts.'" *Id.* And "the Framers structured the Constitution to allow judges to exercise that judgment independent of influence from the political branches." *Id.*

Long before the passage of AEDPA and issuance of *Loper Bright*, Congress expanded Article III jurisdiction to hold state courts to the federal Constitution, in cases of "improper Verdicts in State tribunals obtained under the biassed directions of a dependent Judge, or the local prejudices of an undirected jury." *The Records of the Federal Convention of 1787*, at 124 (Max Farrand ed. 1911) (James Madison). This was achieved through both Article III review on writ of error to the Supreme Court and through the writ of habeas corpus to all Article III courts. *See* James Steven Liebman & Anthony Amsterdam, Loper Bright *and the Great Writ*, II.A, forthcoming in Columbia Human Rights Law Review

7

2025 (hereinafter "Liebman").[1] "[S]ince 1789, Congress has continuously given federal courts jurisdiction to review the legality of custody under state-court judgments, deliberately exercising Article III's judicial power to assure that the state courts are held to their obligation to obey the federal Constitution as the supreme law of the land." *Id.* at II.A.1.

Article III review of state-prisoner habeas cases extends to "cases where the conviction has been in disregard of the constitutional rights of the accused, and where the writ is the only effective means of preserving his rights." *Waley v. Johnston*, 316 U.S. 101, 105 (1942) (per curiam). In an early habeas case, Chief Justice Marshall said his job was to "'do that which the court below ought to have done,' which was to 'fully examine and attentively consider' whether the constitutional requirements were met and to grant the writ, if not." Liebman at II.A.2 (quoting *Ex parte Bollman*, 8 U.S. 75, 114, 125, 135–36 (1807)).

This standard of independent, de novo review held sway until Congress passed AEDPA.

---

[1] *Available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id =4991093; *see also* Appellant's Supplemental Brief, *Sanders v. Plappert*, No. 16-6152 (6th Cir. Nov. 4, 2024) (Dkt. 172) (discussing article).

2. **AEDPA, as interpreted before *Loper Bright*, abdicates the role assigned to federal courts to decide questions of federal law.**

A provision of AEDPA, codified as 28 U.S.C. § 2254(d)(1), forbids federal courts from granting habeas relief on claims adjudicated on the merits in state court unless that adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

Four years after AEDPA was enacted, the Supreme Court took up the question about how broadly the "contrary to" and "unreasonable application" limitations on habeas relief should be interpreted. Four Justices took the view that these phrases must be interpreted in light of the "federal courts' independent responsibility—independent from its coequal branches in the Federal Government, and independent from the separate authority of the several States—to interpret federal law." *Williams v. Taylor*, 529 U.S. 362, 379 (2000) (Stevens, J., op.).

But a majority of the Court focused instead on statutory text. The majority relied on the "cardinal principle of statutory construction that we must 'give effect, if possible, to every clause and word of a statute.'" *Williams*, 529 U.S. at 404 (majority opinion) (quoting *United States v.*

9

*Menasche*, 348 U.S. 528, 538–39 (1955)). The majority rejected Justice Stevens's judicial-independence-centered approach because it did not rely on this cardinal principle. *See id.* at 407. Instead, it emphasized a kind of deference to state-court decisions that was grounded not in an independent evaluation of federal law, but instead in whether the state court's own evaluation of federal law was reasonable. *See id.* at 413.

The kind of deference adopted by the Justice O'Connor majority in *Williams* is antithetical to federal courts' independence because it allows a state court's views to supersede the federal judiciary's legal conclusion. Congress cannot, through AEDPA, override this Court's Article III power of independent judgment by purporting to enact a rule of deference. *See City of Arlington*, 569 U.S. at 297; *Bank Markazi*, 578 U.S. at 225–26; *Klein*, 80 U.S. at 144–48; *Marbury*, 5 U.S. at 177. Thus, *Williams* deference should be held unconstitutional.

### 3. *Loper Bright* recognizes that federal courts may not abdicate their role in deciding questions of federal law.

In *Loper Bright*, the Supreme Court overruled the concept of *Chevron* deference, finding it inconsistent with the proper and peculiar province of the courts to interpret the laws. Under *Chevron*, if an

agency was responsible for administering a congressional statute, and if the statute was ambiguous, federal courts would typically defer to an agency's reasonable interpretation of the ambiguous statute. *See* 467 U.S. 837. In *Loper Bright*, the Supreme Court concluded this was error.

Although *Loper Bright* was a statutory interpretation decision tied to the Administrative Procedure Act (APA), the opinion includes a lengthy discussion of the scope of Article III judicial power because the APA, an act of Congress, cannot usurp the judicial power of the federal courts. *Loper Bright* explains, the Constitution "assigns to the Federal Judiciary the responsibility and power to adjudicate 'Cases' and 'Controversies.'" 144 S. Ct. at 2257. "The Framers . . . envisioned that the final 'interpretation of the laws' would be 'the proper and peculiar province of the courts.'" *Id.* "[T]he Framers structured the Constitution to allow judges to exercise that judgment independent of influence from the political branches." *Id.* Although the federal courts may pay "due respect to Executive Branch interpretations of federal statutes," the executive branch's views cannot "supersede" the federal judiciary's views. *Id.* at 2257–58. "Otherwise, judicial judgment would not be independent at all." *Id.* at 2258. "As Justice Story put it, 'in cases where

11

a court's own judgment differed from that of other high functionaries,'
the court was 'not at liberty to surrender, or to waive it.'" *Id.* (quoting
*United States v. Dickson*, 40 U.S. 141, 162 (1841)).

The APA incorporates these foundational constitutional
principles. It requires courts in agency cases to decide questions of law
and interpret constitutional and statutory provisions. The APA "thus
codifies for agency cases the unremarkable, yet elemental proposition
reflected by judicial practice dating back to *Marbury*: that courts decide
legal questions by applying their own judgment." *Loper Bright*, 144 S.
Ct. at 2261. Under the APA, "agency interpretations of statutes—like
agency interpretations of the Constitution—are *not* entitled to
deference." *Id*. It "remains the responsibility of the court to decide
whether the law means what the agency says." *Id.* (cleaned up). The
APA "incorporates the traditional understanding of the judicial
function, under which courts must exercise independent judgment in
determining the meaning of statutory provisions." *Id.* at 2262.

The requirement that courts exercise independent judgment
implicates the problem of ambiguous rules—a problem well-known to
the framers. "As the Framers recognized, ambiguities will inevitably

follow from" lawmaking. *Loper Bright*, 144 S. Ct. at 2266.

"Courts . . . understand that . . . statutes, no matter how impenetrable, do—in fact, must—have a single, best meaning." *Id.* "So instead of declaring a particular party's reading 'permissible' in such a case, courts use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity." *Id.* Likewise in agency cases, even if the relevant statute is "ambiguous, there is a best reading all the same—the reading the court would have reached if no agency were involved." *Id.* (cleaned up). "It therefore makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best." *Id.* "In the business of statutory interpretation, if it is not the best, it is not permissible." *Id.*

As the Court explained, overruling *Chevron* would have the benefit of returning legal decision-making to the politically independent federal judiciary. When interpreting a statute, courts rely "on the traditional tools of statutory construction," as opposed to agencies, which rely on "individual policy preferences." *Loper Bright*, 144 S. Ct. at 2268. The "Framers crafted the Constitution to ensure that federal judges could exercise judgment free from the influence of the political

branches." *Id.* "They were to construe the law with 'clear heads . . . and honest hearts,' not with an eye to policy preferences that had not made it into the statute." *Id.* (quoting 1 *Works of James Wilson* 363 (J. Andrews ed. 1896)).

Indeed, the *Chevron* experiment had proven to be wrongheaded and unworkable. For one, "the concept of ambiguity has always evaded meaningful definition. As Justice Scalia put the dilemma just five years after *Chevron* was decided: 'How clear is clear?'" *Loper Bright*, 144 S. Ct. at 2270. And at heart, *Chevron* forced courts "to *ignore*, not follow, the reading [of the law] the court would have reached had it exercised its independent judgment." *Id.* at 2265 (cleaned up). Courts applying *Chevron* were required to "mechanically afford *binding* deference to agency interpretations." *Id.* Courts had "to do so even when a pre-existing judicial precedent holds that the statute means something else." *Id.* The doctrine therefore "turns the statutory scheme for judicial review of agency action upside down." *Id.*

Justice Thomas wrote a separate concurrence, clarifying that *Chevron* not only defied the APA but "also violates our Constitution's separation of powers." *Loper Bright*, 144 S. Ct. at 2274. "*Chevron*

14

compels judges to abdicate their Article III 'Judicial Power.'" *Id.* "The judicial power, as originally understood, requires a court to exercise its independent judgment in interpreting and expounding upon the laws." *Id.* (cleaned up). "But, under *Chevron*, a judge must accept an agency's interpretation of an ambiguous law, even if he thinks another interpretation is correct." *Id.* "*Chevron* deference thus prevents judges from exercising their independent judgment to resolve ambiguities." *Id.* "It allows the Executive to dictate the outcome of cases through erroneous interpretations." *Id.* (cleaned up).

Justice Gorsuch likewise wrote a separate concurrence, stressing that "*Chevron* deference runs against mainstream currents in our law regarding the separation of powers." *Loper Bright*, 144 S. Ct. at 2281. "[T]he framers made a considered judgment to build judicial independence into the Constitution's design [and] vested the judicial power in decisionmakers with life tenure." *Id.* at 2284. But "*Chevron* deference . . . precludes courts from exercising the judicial power vested in them by Article III to say what the law is," instead "forc[ing] judges to abandon the best reading of the law in favor of views of those presently holding the reins of the Executive Branch." *Id.* at 2285. The

doctrine interferes with the fair and impartial adjudication of disputes by requiring "courts to place a finger on the scales of justice in favor of the most powerful of litigants, the federal government." *Id.* (cleaned up). *Chevron* "unsettle[d] our Nation's promise to individuals that they are entitled to make their arguments about the law's demands on them in a fair hearing, one in which they stand on equal footing with the government before an independent judge." *Id.* at 2289.

In sum, the *Loper Bright* majority and concurring opinions recognize that federal courts may not abdicate their role in deciding questions of federal law. Rather, courts must exercise independent judgment when deciding legal questions.

### B. This Court must exercise its own judgment—without deference—about what the Constitution requires in this case.

*Williams* deference is unconstitutional because it conflicts with the constitutional requirement of an independent federal judiciary. The same constitutional principles animating *Loper Bright* require courts to eschew applying *Williams* deference, which has a similarly impermissible function as *Chevron* deference.

16

### 1. *Williams* deference is inconsistent with an independent federal judiciary.

*Williams* deference is antithetical to federal judicial independence for the same reasons that *Chevron* deference is. Once courts are established under Article III, the "judicial Power" vests, and it extends "to all Cases . . . arising under this Constitution" and federal law. U.S. Const. art. III. A state court's views of the Constitution cannot "supersede" the federal judiciary's views, reached through exercising the judicial power. *Loper Bright*, 144 S. Ct. at 2258. "Otherwise, [federal] judicial judgment would not be independent at all." *Id.*

Yet § 2254(d)(1) deference as currently interpreted forbids an independent judgment about the meaning of federal law. *Williams* deference forces federal courts "to *ignore*, not follow, the reading [of the law] the court would have reached had it exercised its independent judgment." *Loper Bright*, 144 S. Ct. at 2265 (cleaned up); *see, e.g.*, *Meras*, 676 F.3d at 1186, 1190; *Davis v. Straub*, 445 F.3d 908, 911 (6th Cir. 2006) (Martin, C.J., dissenting) ("This Court's reading of AEDPA relegates us to spectators . . . ."). When a habeas petitioner raises a claim for relief, there's a "single, best" answer to the constitutional

17

question. *Loper Bright*, 144 S. Ct. at 2266. "It therefore makes no sense to speak of a 'permissible'" answer to the constitutional question when that answer "is not the one the [federal] court . . . concludes is best. . . . [I]f it is not the best, it is not permissible." *Id.*

Section 2254(d) as construed in *Williams* is inconsistent with the framers' desire to "ensure that federal judges could exercise judgment free from the influence of the political branches." *Loper Bright*, 144 S. Ct. at 2268. Just as the framers were concerned about executive branch overreaching, they were concerned about state judges. Certain framers worried state judges "cannot be trusted with the administration of the National laws and often place the General & local policy at variance." Liebman at I.A. (cleaned up). There were concerns about "improper Verdicts in State tribunals under the biassed directions of a dependent Judge, or the local prejudices of an undirected jury." *Id.* Article III responds to those concerns. According to Alexander Hamilton, "[n]either Congress nor any other body lacking the complete independence afforded by Article-III judges' tenure and salary protections . . . could interfere with federal judges' interpretive power." *Id.* at I.C. (cleaned up). But *Williams* deference elevates the decisions of state court

18

judges—who are often elected for terms of years, not appointed for life with salary protections—over "federal judges' interpretive power." *Id.* It therefore conflicts with the framers' design. *Cf. Frye v. Broomfield*, 115 F.4th 1155, 1167 (9th Cir. 2024) (Mendoza, C.J., concurring) ("Five federal judges have studied this case: two determined that Frye was unconstitutionally shackled, and the other three recognize that it is 'a close call.' One would think that federal judges' impressions of the federal issues presented would carry more weight.").

*Loper Bright* expressed concerns about the concept of ambiguity, *i.e.*, whether courts can accurately deduce when a statute crosses the line from unambiguous to ambiguous. The same issues plague § 2254(d)(1) as construed in *Williams*. The statute requires federal courts to consider whether a state court's decision is unreasonable. But how unreasonable is unreasonable?

The logic of Justice Thomas's and Justice Gorsuch's concurrences applies in similar fashion. *Williams* deference impermissibly "allows the [state courts] to dictate the outcome of cases through erroneous interpretations." *Loper Bright*, 144 S. Ct. at 2274 (Thomas, J., concurring) (cleaned up). *Williams* "deference . . . precludes courts from

exercising the judicial power vested in them by Article III to say what the law is," instead "forc[ing] judges to abandon the best reading of the law in favor of views of those presently holding the reins of the [state judiciary]." *Id.* at 2285 (Gorsuch, J., concurring). The doctrine interferes with the fair and impartial adjudication of disputes by requiring "courts to place a finger on the scales of justice in favor of the most powerful of litigants," state governments. *Id.* (cleaned up). It "unsettle[d] our Nation's promise to individuals that they are entitled to make their arguments about the law's demands on them in a fair hearing, one in which they stand on equal footing with the [state] government before an independent [federal] judge." *Id.* at 2289.

Applying *Williams* deference also has unique pitfalls not present in agency cases governed by *Chevron*. For example, "*Chevron* deference unified federal law around a single agency's interpretation—with some disruptions every four or eight years, perhaps—but never fragmented federal law into 30,000 pieces in the inconstant hands of the judges in every State." Liebman at V. In other words, not only does the Constitution not have a single best meaning for state prisoners—it could have endless different "permissible" meanings. *See Williams*, 529

U.S. at 389–90 (Stevens, J., op.) (recognizing that such an outcome would undermine the "well-recognized interest in ensuring that federal courts interpret federal law in a uniform way"); *see also Cohens v. Virginia*, 19 U.S. 264, 386–87 (1821) ("Different States may entertain different opinions on the true construction of the constitutional powers of Congress. . . . How extensive may be the mischief if the first decisions in such cases should be final!"). And *Chevron* deference did not undermine the Constitution's supremacy in the way that *Williams* deference does, by sanctioning imprisonment based on states judges' reasonable-but-wrong interpretations of the amendments.

If *Chevron* deference is contrary to principles of federal judicial independence, then so too is *Williams* deference.

### 2. *Williams* deference is not a mere remedial limitation.

This Court previously rejected a separation of powers challenge to § 2254(d). But *Loper Bright* undermines its reasoning.

According to this Court, § 2254(d) does not force "courts to discern or to deny a constitutional violation." *Crater v. Galaza*, 491 F.3d 1119, 1127 (9th Cir. 2007). "Instead, it simply sets additional standards for

granting relief." *Id.* In other words, according to *Crater*, a federal habeas court is free under § 2254(d) to agree with a petitioner that a constitutional violation occurred; the statute simply forbids the court from granting relief to the petitioner if the state court had a reasonable basis for denying relief. Thus, the statute doesn't infringe on the federal courts' ability to interpret the Constitution; it infringes on their authority to grant the writ.

But remedial discretion is not a basis to forgo providing relief that the Constitution otherwise requires. In *Reynoldsville Casket Co.*, respondent argued that the Ohio Supreme Court properly refused to provide the petitioner with a remedy when a United States Supreme Court decision struck down an Ohio tolling statute as unconstitutional. *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752 (1995). The Supreme Court disagreed. It rejected respondent's argument that the matter was merely about a remedy. Accepting the argument would mean the Court would be upholding and allowing unconstitutional discrimination and "would actually consist of providing *no* remedy for the constitutional violation." *Id.* at 753. The Court did "not see how" a state court "could change a legal outcome that federal law, applicable

22

under the Supremacy Clause, would otherwise dictate simply by calling its refusal to apply that federal law an effort to create"—or, presumably, deny—"a remedy." *Id.*

Nor can *Crater*'s reasoning be squared with *Loper Bright* itself. The same argument from *Crater* could be made about *Chevron* deference. Under this argument, a federal court applying *Chevron* was free to assert that the agency's interpretation of the ambiguous statute was not "the best reading of the statute." *Loper Bright*, 144 S. Ct. at 2266. Instead, all *Chevron* did was require the federal court to rule in favor of the agency as a remedial matter, notwithstanding the court's preferred interpretation of the statute. Under this logic, *Chevron* was consistent with the duty of federal courts to say what the law is; the doctrine simply restricted the courts' remedial power to rule in favor of the party challenging the agency action.

*Loper Bright* refrained from construing *Chevron* in such a counterintuitive manner. Rather, *Loper Bright* treats the interpretation of the statute and the corresponding remedy as coextensive. "As Justice Story put it, 'in cases where a court's own judgment differed from that of other high functionaries,' the court was 'not at liberty to surrender, or

to waive it.'" 144 S. Ct. at 2258 (quoting *Dickson*, 40 U.S. at 162). If a federal court's judgment regarding a petitioner's constitutional claim differs from the state court's judgment, but the federal court is forced under § 2254(d) to withhold relief, then the federal court is forced to "surrender, or to waive" its judgment. *Id. Chevron* impermissibly forced courts "to *ignore*, not follow, the reading [of the law] the court would have reached had it exercised its independent judgment." *Id.* at 2265 (cleaned up). Likewise, if a federal court withholds relief under § 2254(d) because a state court reached an incorrect result on an ambiguous legal issue, the federal court is being forced "to *ignore*, not follow," its view of the law. *Id.*

In other words, if a federal court concludes the petitioner suffered a constitutional violation but is powerless to grant the writ under § 2254(d), it is no answer to say the federal court may still state its independent judgment regarding the constitutional claims as a matter of advisory dicta. *See, e.g.*, *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 378 (2024) (explaining that Article III forbids the federal courts from issuing advisory opinions). Rather, the federal court is being forced to "surrender," "waive," "ignore," and "not follow" its

24

independent judgment when it denies relief. *Loper Bright*, 144 S. Ct. at 2258, 2265. That creates an Article III problem, just the same as if the court were unable to state its independent judgment in the first place.

As *Loper Bright* further explains, the notion of a legally "permissible" but incorrect ruling is anathema to the federal judiciary. 144 S. Ct. at 2266. "In the business of [constitutional] interpretation, if it is not the best, it is not permissible." *Id.* It therefore makes no sense for § 2254(d) to create the concept of an incorrect but permissible state court ruling on a federal constitutional claim.

The concurring opinions in *Loper Bright* lead to the same conclusion. *Williams* deference "allows the [state courts] to dictate the outcome of cases through erroneous interpretations." 144 S. Ct. at 2274 (Thomas, J., concurring) (cleaned up). Even if the federal court can state its preferred resolution, the problem remains present so long as the "outcome"—*i.e.*, the federal court's ability to do "justice"—is constrained by the erroneous state court decision. *Id.*; *id.* at 2285 (Gorsuch, J., concurring); *see also* Liebman at III.C.1.

For these reasons, *Crater* is inconsistent with *Loper Bright* and should be reconsidered.[2] The Supreme Court overruled *Chevron* because it had "become an impediment . . . to accomplishing the basic judicial task of 'say[ing] what the law is.'" *Loper Bright*, 144 S. Ct. at 2271 (quoting *Marbury*, 5 U.S. at 177). The same is true of *Williams* deference. If *Chevron* deference is inconsistent with the APA and the corresponding separation-of-powers principles embodied in the APA, then *Williams* deference is likewise inconsistent with the Article III authority of federal courts. This Court should therefore decline to follow *Crater*.

In sum, if the Court concludes that the state court made decisions in this case that were incorrect yet reasonable, the Court still must exercise independent judgment and should grant relief. *Williams* deference is unconstitutional either on its face or as applied to the claims for relief that the state court adjudicated on the merits in this case.

---

[2] The Court *en banc* can reconsider *Crater*, or a panel can find that *Crater*'s reasoning is clearly irreconcilable with *Loper Bright*. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003).

CONCLUSION

Amici urge this Court to conclude that *Williams* deference is unconstitutional under *Loper Bright*, reverse the district court's decision to apply § 2254(d) as violating Article III, and remand with instructions to grant relief to Mothershead accordingly.

Dated this 13th day of January, 2025.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Stacy Newman*
Stacy Newman
Assistant Federal Public Defender

*/s/ Shelly Richter*
Shelly Richter
Assistant Federal Public Defender

Attorneys for Amici

DEFENDERS

Fidel Cassino-DuCloux
Federal Public Defender, District of Oregon
101 Southwest Main Street, Room 1700
Portland, OR 97204

Kasha Castillo
Executive Director, Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92102

27

Colin Fieman
Federal Public Defender, Western District of Washington
Westlake Center Office Tower
1601 Fifth Avenue, Suite 700
Seattle, WA 98101

Andrea George
Executive Director, Federal Defenders of Eastern Washington and
Idaho
601 West Riverside Avenue, Suite 900
Spokane, WA 99201

Rachel Julagay
Executive Director, Federal Defenders of Montana, Inc.
104 2nd Street South, Suite 301
Great Falls, MT 59401

Salina M. Kanai
Federal Public Defender, District of Hawaii
Prince Kuhio Federal Building
300 Ala Moana Boulevard, Suite 7104
Honolulu, HI 96850

Jodi Linker
Federal Public Defender, Northern District of California
450 Golden Gate Ave., 19th Floor
San Francisco, CA 94102

Leilani V. Lujan
Federal Public Defender, District of Guam and the Northern Mariana
Islands
First Hawaiian Bank Building
400 Route 8, Room 501
Mongmong, GU 96910

Jamie McGrady
Federal Public Defender, District of Alaska

188 W Northern Lights Blvd, Suite 700
Anchorage, AK 99503

Cuauhtemoc Ortega
Federal Public Defender, Central District of California
321 E. 2nd Street
Los Angeles, CA 90012

Nicole Owens
Executive Director, Federal Defender Services of Idaho
702 West Idaho Street, Suite 1000
Boise, ID 83702

Jon M. Sands
Federal Public Defender, District of Arizona
850 West Adams Street, Suite 201
Phoenix, AZ 85007

Heather Williams
Federal Public Defender, Eastern District of California
801 I Street, 3rd Floor
Sacramento, CA 95814

## CERTIFICATE OF COMPLIANCE

This brief contains 4,793 words, excluding the items exempted by Fed. R. App. P. 32(f) and including words in photos. This brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief complies with the word limit of 9th Cir. Rules 29(a)(5) and 32-1.

Dated this 13th day of January, 2025.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Stacy Newman*
Stacy Newman
Assistant Federal Public Defender

*/s/ Shelly Richter*
Shelly Richter
Assistant Federal Public Defender